## KEOUGH v. SCOTT COUNTY.

1. **Bounty:** WHO ENTITLED TO: EVIDENCE. That a soldier would have enlisted in the service of the United States, without the inducement of a bounty offered by a county to all who should enlist therefrom, constitutes no defense to a recovery in an action therefor against the county, and evidence to that effect is, therefore, inadmissible in such action.

2. **Practice:** OBJECTIONS TO EVIDENCE. Exceptions to the admission of evidence must show the ground upon which the objection was made.

3. **Bounty:** EVIDENCE: DECLARATIONS. In an action to recover a bounty offered by certain resolutions of the board of supervisors of a county to persons enlisting in the military service, the declarations of one of a committee appointed by the board, respecting such bounty, made while acting as such, are admissible against the county for the purpose of showing that the committee acted, although such declarations were after the enlistment in question.

4. **Evidence:** ERROR WITHOUT PREJUDICE. An error in sustaining an objection to a question propounded to a witness is cured, where the matter sought is elicited by another interrogatory to the same witness.

5. **Bounty:** OFFER BY SUPERVISORS. The board of supervisors of Scott county passed resolutions offering a bounty to volunteers, and appointing a committee to act in the premises, who were directed not to pay any bounty to any volunteer for any precinct or sub-district of the county after its quota under a certain call for troops had been filled. *Held,* that a person enlisting would be entitled to the bounty offered, though it should afterward turn out that no quota was in fact due from the county at the time of his enlistment, if the committee thus appointed had determined or believed that there *was* a deficiency, and were proceeding upon that hypothesis

*Appeal from General Term, Ninth District (Scott County).*

## TUESDAY, DECEMBER 21.

PLAINTIFF claims one hundred and fifty dollars, with interest, as the " bounty offered to volunteers " by certain

resolutions of the supervisors of the county, adopted on the 5th and 6th days of January, 1865. For these resolutions and the general facts of the case reference is made to the former appeal, 25 Iowa, 569. On the retrial, plaintiff had judgment; this was affirmed by the General Term, and defendant again appeals.

*J. B. Leake* for the appellant.

*Brown & Sully* and *H. R. & E. Claussen* for the appellee.

WRIGHT, J.— Appellant presents several questions for our consideration.. Let us notice them in their order, some of them very briefly, others more at length.

*1. BOUNTY: who entitled to: evidence.*

*First.* Plaintiff was asked, on his cross-examination, whether he would have enlisted at the time he did if he had not been told of this bounty, and whether he had made up his mind to enlist before he heard of the same. These questions were objected to, the objection sustained, and exceptions duly taken.

It seems to us, that the motive influencing the soldier is immaterial in determining his right to his bounty. The true inquiry is: Did he place himself in a position to entitle him to the offer made by the county? And though the promptings of patriotism might have brought him to the service of his country, and though he had made up his mind to enlist *before* learning of the offered bounty, he would just as much be entitled to it as though this alone was the inducing cause. The man who loved his country, and for this alone willingly periled his life in its defense, was not excluded. The treasury of the county was not to be reached by the man of mercenary motives alone, one having no other or nobler stimulant.

*Second.* Plaintiff offered in evidence a certain book,

kept by the clerk of the board, showing the names, etc., of those returned to him, or who presented certificates of their enlistment, being, as the clerk said, a book kept for his own convenience, rather than a record authorized by the committee. To this defendant objected upon a specific ground; but whether the objection was sustained or overruled the record does not disclose. There is, hence, nothing in this conection for us to consider.

*Third.* The chairman of the committee appointed by the resolutions of the board, published in a newspaper a **2. PRACTICE: ob-** card, concerning this "county bounty" and **jections to evidence.** the action of the committee, explaining their delay, etc. This was offered in evidence, objected to, and the objection overruled. The ground of the objection was not stated, however, and there is nothing which can be regarded by us. Rev. § 3107. And this same remark applies to the objection made to the "census of 1860," introduced by the plaintiff, to show the population of the loyal States, of Scott county, and the particular township receiving the credit of the enlistment. The evidence was objected to, but no ground stated.

*Fourth.* A witness, who was engaged in procuring volunteers, was asked to state what the clerk of the **3. BOUNTY: evidence: declarations.** board, who was, also, a member of the committee, said at the time he printed certain certificates. This was objected to, because the conversation was *after* the enlistments (including plaintiff's), and, hence, could not have influenced any one. It was quite as material, however, to show that the committee *acted*, as that any one was influenced by their action. And it was competent to show this by proving what the clerk said, while in the discharge of his duty. But here it is urged, that the county could only be bound by the action of the committee *as a whole*, and that statements made by the individual members, unless authorized or directed

by the committee, would no more bind the county than the action of any other private citizen. And, remembering now that it was first shown (at least there was evidence tending to show) that the clerk was acting for the committee, and that what he said was while thus acting, we say, remembering these facts, there is no question as to the admissibility of the testimony. The individual members, as such, would have no power to bind the county. It was the committee that had this power, but, after it had acted, the *fact* that it had might be shown by circumstances, and especially by the statements of any one of the members to whom special duties or powers had been delegated. For the action of such agent of the committee, within the scope of his powers and the powers possessed by the committee would bind the county, just as the acts of an agent would bind an individual. Such statements would no longer be those of the individual, but of the committee. More than this we need not say upon this point, as the question in another form arises in a subsequent part of the case.

*Fifth.* A possible error in sustaining an objection to a question is cured, when the matter sought is procured by 4. EVIDENCE; error without prejudice. another interrogatory to the same witness. And hence, when one question was held to be too indefinite, and another propounded at once, which elicited the very matter first desired, the objecting party is in no position to complain of the action of the court below.

*Sixth.* Witnesses were asked whether there was, or was not, a quota due; what action, if any, was taken by 5. BOUNTY : offer by supervisors. the committee, in ascertaining or determining, what the quota was; and the action of the court in refusing these questions, and in instructing the jury thereon (all of which may be considered together), are the only other matters demanding our

attention, unless it may be the usual concluding objection, that the court erred in overruling the motion for a new trial. By reference to the facts, as found in the statement preceding the opinion in the former appeal, it will be seen that the county, in order that it might fill its quota, on this call for three hundred thousand men, offered a bounty of one hundred and fifty dollars to volunteers, to fill the proportion of each sub-district, as the same *may have been, or may be assigned,* by the proper authority. Certain persons were named, who were, as a committee, to have the management of the matter. They were to pay nothing to any volunteer until he was accepted by the authorities of the United States, for the precinct or sub-district to which he was to be credited; nor were they to pay such bounty to any volunteer for any precinct or sub-district, *after its quota, under such call, should have been filled.* The committee were to keep an account of all the recruits received, the amount paid, for what districts paid, and to report their action to the board; and the clerk was to issue warrants, upon the order of the committee, they having the authority to convert said warrant into money, and, if the *volunteers* were not received, and a draft took place, the same amount was to be paid to any one so drafted, etc.

On the first trial it was admitted that plaintiff did not apply to the committee for the bounty; that the committee never acted; and that, at the date of the call for three hundred thousand men (December 21, 1864), no quota was due from the State, nor was there at any time thereafter. And all this is readily explained, when it is seen that the District Court there held the county liable, whether there was a quota due or not; standing upon the terms of the resolution of January 5th, unaffected by those, upon the same subject, passed the next day.

On the second trial, however, these admissions were

not made, there being evidence tending to show that the committee did act, that plaintiff did apply for the bounty, and that a quota was due or believed to be due from the State, etc.; and that he did volunteer, was duly accepted, and credited to one of the sub-districts of the county, are facts reasonably well established.

There is doubt, from the testimony, whether any thing was due from Scott county under this call, at the time plaintiff enlisted. The weight of the testimony we believe to be that the State had filled its quota; but that this was not known at the time, and that the authorities, including the supervisors and this committee, acted upon the supposition that several sub-districts (if not all) in the county were in arrears. And now the question, and the difficult one, is, upon which party was the burden of proof to establish that the county was thus in arrears; and was it necessary that the committee should have determined the quota, have adjudged the liability and accepted volunteers formally or specifically thereunder, before plaintiff can recover?

For myself, I confess that when the case was submitted upon argument, I was inclined to the positions assumed by appellant on this part of the case; and this was especially so, in view of what was said on the former appeal. A careful examination of the record, however, and the very language used in the former opinion, have induced me to believe that, in these respects, the instructions and rulings of the court were right.

If the committee acted, if volunteers were offered and accepted under the call and these resolutions, then in my judgment the county would be liable, though it should afterward turn out there was no deficiency. The powers of the committee, I grant, were limited, for they were prohibited from paying bounty after the quota under the call was filled. But if the committee — not necessarily

in any formal manner and in writing — but if they did determine that there was a deficiency ; if they proceeded upon that hypothesis, and upon the faith thereof persons volunteered and were accepted, in my opinion he need not do more in order to recover. Certainly he is not required to show that the quota was *not, in fact*, filled. The object of the proviso under consideration was to prevent the otherwise possible construction, that the committee could pay the bounty to volunteers, whatever their number, and however little needed to save a district from a draft.

But it was not intended that if one should volunteer in good faith and be accepted, he was to lose his bounty, because by a subsequent careful adjustment of accounts it was found that there was in fact no deficiency. It is to have a reasonable construction.

Indeed, I may go further, and say that it should be liberally construed in favor of those who hazarded so much for their country, and thereby relieved the tax payers at home from the dangers of the field. The object was to stimulate enlistments,— to fill up the regiments,— save the State or county from the name and danger of a draft ; and if a volunteer accepted and complied with the terms, and the committee acted in good faith, believing, and leading others to believe, that the quota was not filled, then I think the county was liable. A careful reading of the very full and apparently well-digested instructions of the court below, will be found to assert substantially the doctrine above announced. They are not, in my judgment, in conflict with the former opinion of this court. For they recognize the necessity of action on the part of the committee, and that plaintiff should have claimed the bounty under their action and sanction. Not every volunteer would be entitled to it, but only those bringing themselves *within* the terms of the offer made

by the supervisors and acting with the approval of the committee. As to plaintiff, it was not necessary that the committee should formally organize and declare that a quota was due. If, as one of the witnesses expresses it, " they took that for granted," in view of the terms of the resolutions, the number of men called for and prior enlistments, and so held out, and encouraged volunteers to believe that a compliance with the terms would entitle them to the bounty, the county would be liable. Plaintiff would have a right, from such representations and actions, to assume that the committee had done what was necessary, if any thing, to authorize the offer of the bounty. In other words, the material inquiry is : Did the committee act ? Did it, as such, encourage enlistments ? Did plaintiff bring himself within the terms of the announced rules, and do all that was required of him ? and it is not important to establish that it, by a formal written order, declared what the quota of each sub-district was. In substance, as already suggested, this is what the jury were told, and in this view of the case, I do not think there was any error. And in this conclusion, the other judges concurring (except Beck J., who does not concur in the sixth and last point discussed above), having noticed all the errors assigned, it is ordered that the judgment be

Affirmed.